# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH WATSON, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 18-CV-4460 |
| | : | |
| CITY OF PHILADELPHIA, *et al.*, | : | |
|     Defendants. | : | |

## MEMORANDUM

**JOYNER, J.**                                                                                                                                      **OCTOBER 24, 2018**

      Plaintiff Joseph Watson, a State inmate currently incarcerated at SCI Somerset, brings this *pro se* civil action pursuant to 42 U.S.C. § 1983 against the "City of Philadelphia Prothonotary John/Jane Does," Legal Director Marissa B. Bluestine, and the "Innocen[ce] Project John/Jane Does." (ECF No. 2.) Watson raises claims regarding violations of his right to access the courts. He has filed a Motion for Leave to Proceed *In Forma Pauperis*. (ECF No. 1.) For the following reasons, the Court will grant Watson leave to proceed *in forma pauperis* and dismiss his Complaint.

## I.     FACTS

      Watson alleges that throughout the years, he "has been in contact with the Innocen[ce] Project [at the Temple University Beasley School of Law] to represent him and help prove his innocence because he has been falsely accused due to coercion and threaten[ed] by the Philadelphia police who ha[ve] forge[d] signature[s] of official[s] on documents to secure a[n] arrest and conviction." (Compl. at 23.)[1] According to him, Project staff repeatedly told him that "they only accept cases that had DNA so it could be tested," and that Watson just needed a

---

[1] The Court uses the pagination assigned to the Complaint by the CM/ECF docketing system.

1

handwriting expert. (*Id.*) In 2015, Watson read an article written in May of 2009 in which Marissa Bluestine, the Project Director, "boast[ed] how they have handwriting analysis." (*Id.*) Watson wrote to the Project, "expressing he was misled by them for years and he need[ed] representation and a handwriting expert to look at the forge[d] documents that the police made in his case to frame him." (*Id.*) In a letter dated April 28, 2015, Bluestine informed Watson that the Project could not take his case because he "engaged in consensual relations with the complainant." (*Id.* at 36.) She told Watson that the Project could not review his case because he "[did] not say [he] had nothing to do with the incident, but that the complaint lied about her alleged assault." (*Id.*) Watson wrote back, stating that Bluestine had slandered him by stating that he had confessed to the crime and asking her "to produce that document that prevented him from receiving representation." (*Id.* at 23.) He states that he "was sent an apology letter dated May 20, 2015 and still denied . . . representation." (*Id.*; *see id.* at 37.) Watson believes that "the Board members spread that rumor and or defendant Bluestine made it up to discourage [him] from further request[s]. (*Id.* at 23.)

In April of 2016, Watson filed a complaint for libel and slander against Bluestine and the Temple University Beasley School of Law in the Court of Common Pleas for Philadelphia. *Watson v. Bluestine*, Docket No. 160403043 (Phila. Ct. Common Pleas). On August 30, 2016, Bluestine and the School of Law, through counsel Eli M. Segal and Gregory L. Liacouras, filed preliminary objections to Watson's complaint. *Id.* Watson filed an opposition to those objections on September 20, 2016. *Id.* By Order entered on September 21, 2016, Judge New sustained the preliminary objections and dismissed Watson's complaint without prejudice to his right to file an amended complaint within twenty (20) days. *Id.*; (Compl. at 29.)

Watson asserts that he did not receive that Order until October 3, 2016, fourteen (14) days after it was entered. (Compl. at 19-20.) He prepared an amended complaint and gave it to a prison official for mailing on October 9, 2016. (*Id.* at 20.) On October 14, 2018, the School of Law filed a Praecipe for Dismissal with Prejudice, stating that Watson had not filed an amended complaint. *Watson v. Bluestine*, Docket No. 160403043. The case was dismissed on October 17, 2016. *Id.* That same day, a Clerk in the Prothonotary's Office prepared a notice to Watson that his amended complaint had not been filed because it was late and because his case was dismissed. (Compl. at 20, 35.) According to Watson, the Clerk failed to honor Pennsylvania's prison mailbox rule by not acknowledging the date that he gave his amended complaint to the officer for mailing as the filing date. (*Id.* at 20-21.) Watson received the notice and his returned amended complaint on October 20, 2016. (*Id.* at 21.)

Watson appealed the dismissal of his case to the Commonwealth Court. *Watson v. Innocence Project*, Docket No. 267 CD 2017 (Pa. Commw. Ct.). On March 9, 2017, the Commonwealth Court Filing Office sent the Notice of Appeal back, noting that it had a defect because it had not been served on the appellees. *Id.* On April 10, 2017, Watson's appeal was dismissed because he had failed to comply with the defect correction notice. *Id.* The Commonwealth Court subsequently received a letter from Watson. *Id.* By Order entered on April 20, 2017, the Commonwealth Court treated his letter as a request to have his appeal transferred to the Superior Court and dismissed that request as moot in light of the dismissal of his case.[2] *Id.*

---

[2] In his Complaint, Watson asserts that the "Superior Court remand[ed] the case so the Prothonotary could develop the record since [his] argument is that the Prothonotary fail[ed] to honor the prison mail box rules." (Compl. at 21.) Watson argues that the Prothonotary disregarded a Superior Court order to deliver the record. (*Id.* at 21-22.) A search of public dockets, however, reveals that Watson never appealed this matter to the Superior Court.

Watson now contends that the Defendants conspired to violate his right to access the courts under the First Amendment. (Compl. at 6, 22-25.) He requests declaratory relief as well as compensatory and punitive damages. (*Id.* at 25.)

II.     **STANDARD OF REVIEW**

The Court will grant Watson leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[3] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Id.* The Court may also consider matters of public record. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). As Watson is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

III.    **DISCUSSION**

Watson alleges that the Defendants conspired to violate his right to access the courts. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a

---

[3] However, as Watson is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

conspiratorial agreement can be inferred." *Great W. Mining & Mineral Co.*, 615 F.3d at 178. "[A] bare assertion of conspiracy will not suffice." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "'A conspiracy cannot be found from allegations of judicial error, ex parte communications (the manner of occurrence and substance of which are not alleged) or adverse rulings absent specific facts demonstrating an agreement to commit the alleged improper actions.'" *Capogrosso v. The Supreme Court of New Jersey*, 588 F.3d 180, 185 (3d Cir. 2009) (per curiam) (quoting *Crabtree v. Muchmore*, 904 F.2d 1475, 1480-81 (10th Cir. 1990)). Rather, a plaintiff must allege in specific "terms the approximate time when the agreement was made, the specific parties to the agreement (i.e., which judges), the period of the conspiracy, or the object of the conspiracy." *Great W. Mining & Mineral Co.*, 615 F.3d at 179.

Watson's allegations do not support a plausible conspiracy. He bases his conspiracy claim on his assumption that his loss in state court stemmed from something nefarious. However, "merely . . . being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge." *Dennis v. Sparks*, 449 U.S. 24, 28 (1980). Moreover, there is no basis for concluding that Bluestine and the employees of the Innocence Project could be considered to be state actors subject to liability under § 1983. *See Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) ("[W]e have explained that the principal question at stake [in determining whether a private actor can be considered to have acted under color of state law] is whether there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." (quotations and alteration omitted)); *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999) ("Attorneys performing their traditional functions will not be considered state actors solely on the basis of their position as officers of the court.").

Moreover, Watson cannot maintain his underlying access to the courts claim. "Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008). As noted above, Watson contends that the Defendants conspired to violate his right to access the courts by disregarding the prison mailbox rule to render his amended complaint timely filed. He alleges that because of their actions, he lost the ability to pursue his libel and slander claims against Bluestine and the School of Law. In order to state an access to the courts claim, Watson

> must show (1) that [he] suffered an "actual injury"—that [he] lost a chance to pursue a "nonfrivolous" or "arguable" underlying claim; and (2) that [he] has no other "remedy that may be awarded as recompense" for the lost claim other than in the present denial of access suit." *See Christopher v. Harbury*, 536 U.S. 403, 415 (2002). To that end, prisoners must satisfy certain pleading requirements: The complaint must describe the underlying arguable claim well enough to show that it is "more than mere hope," and it must describe the "lost remedy."

*Monroe*, 536 F.3d at 205-06 (second internal citation omitted). With respect to the lost remedy, a prisoner must show how his claims "may no longer be pursued as a result of defendant's actions." *Id.* at 206 n.9. Moreover, inmates "may only proceed on access-to-courts claims in two types of cases, challenges (direct or collateral) to their sentences and conditions of confinement." *Monroe*, 536 F.3d at 205 (citing *Lewis v. Casey*, 518 U.S. 343, 354-55 (1996)). "In other words, a prisoner has no constitutional right of access to the courts to litigate an unrelated civil claim." *Ross v. Clerk of Courts of Court of Common Pleas of Philadelphia, Pa.*, 726 F. App'x 864, 865 (3d Cir. 2018) (per curiam) (quoting *Simmons v. Sacramento Cty. Super. Ct.*, 318 F.3d 1156, 1160 (9th Cir. 2003)).

Here, Watson alleges that he was prohibited from proceeding on his libel and slander claims against Bluestine and the School of Law. However, because this action is not related to his criminal sentence or his conditions of confinement, he cannot maintain an access to the

courts claim. *See Ross*, 726 F. App'x at 865 (concluding that prisoner plaintiff could not maintain access to the courts claim because his underlying medical malpractice action was not related to his criminal sentence or his conditions of confinement). Moreover, as noted above, Watson appealed the dismissal of his suit to the Commonwealth Court. However, his appeal was dismissed for failure to comply with the defect correction notice. Thus, Watson cannot demonstrate that he had no other remedy other than this present suit. *See Monroe*, 536 F.3d at 205-06.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Watson leave to proceed *in forma pauperis* and dismiss his Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. Watson will not be provided leave to file an amended complaint because amendment would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 112-13 (3d Cir. 2002). An appropriate Order follows.

BY THE COURT:

s/J. Curtis Joyner
**J. CURTIS JOYNER, J.**